Argued January 15, remanded with directions February 4, 1975

# DENNIS ADAMS, *Petitioner, v.* OREGON STATE PENITENTIARY, *Respondent.*

531 P2d 754

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

In this appeal inmate Dennis Adams contends that there was insufficient evidence for the Disciplinary Committee to find he had violated Major Rule No. 4 of the Oregon State Penitentiary.

The report of violation charged him with "Major Violation No. 4 (Assault)." The definition of assault in Rule No. 4 is "[f]ighting or the intentional physical injury of another." The substance of the charge in this case alleges that Adams "had a fight with inmate Poole * * *," that the fight was broken up by three corrections officers and that as Adams was being conducted down some stairs Poole "jumped Adams agian [sic] * * *." Adams contends that self-defense against aggression should be considered as a defense to the fighting charge.

Adams testified that he was waiting to play a game of pool, that it was his turn next to go to the pool table when Poole came to where he was sitting and grabbed the pool rack out of his hand. He said he tried to say something when Poole hit him on the side of the head three times, at which he got up and

fought back. He said he stopped when the officers came to break it up. He said as he was being led away one of the officers said, "look out," and "there was Poole coming at me again." He also testified that when the fight started Poole had a glass jar in his hand and he was not sure what Poole hit him with. At the hearing one of the members of the Disciplinary Committee said:

> "* * * On the streets we take into consideration who the aggressor was. In the institution, fighting of itself is what the word assault refers to, fighting or the intentional injury of another, and it's fighting or the intentional. So that fighting stands alone * * *."

From the foregoing and the decision rendered it appears that the interpretation placed upon the rule against fighting is such that there are no circumstances under which an inmate may be justified in protecting himself against the unprovoked assault of another. The Attorney General's brief points out that "* * * [a] fight within the institution can easily trigger a broader eruption which could ultimately endanger every person, officer and inmate, inside the prison. For this reason no fighting for any reason can be allowed." The Attorney General also argues that in the correctional institutions the officers "are omnipresent and a reasonable alternative to self-defense exists."

■ We do not agree that no circumstances can exist in the institution where a person has justification for defending himself. The extreme situation may well be where one is holding a knife at the throat of another and the supposedly omnipresent guards are in no position to stop the stroke of the knife. Common sense indicates that the conclusion is inescapable that the

inmate assaulted would be justified in taking defensive measures to prevent his imminent demise.

Further, whether guards can be considered omnipresent depends on what is meant by that term. For example, in the instant case although three officers were present at the "fight" the best they did to attempt to prevent Poole from actually making contact in the second attack was to call to Adams to "look out." The very fact that one of the guards reacted by telling him to "look out" is indicative of that being a natural reaction—warning him that he had better look out for himself. It seems a strange anomaly—if that were all there was to the matter—that Adams should be penalized for doing what the guard reactively indicated he should do.

While the context there was different, part of the opinion in *Stoughton v. Powers,* 264 Wis 582, 60 NW2d 405 (1953), is interesting for comparison's sake in the case at bar. The court there said:

> " 'Fighting,' the act prohibited by the ordinance, has a common and ordinary meaning sufficiently definite to be understood with reasonable certainty by persons of ordinary intelligence. That common and ordinary meaning is well expressed in the old axiom that 'It takes two to fight.'
>
> " 'Fight' has been defined as a combat between two persons suggesting primarily the notion of a brawl or unpremeditated encounter, *Gitlow v. Kiely,* (D.C. 1930), 44 Fed. (2d) 227; as an altercation for which the participant is in some degree to blame and in which he is, to some extent at least, a voluntary participant, and not that which is unavoidable and beyond his control, or which has not been occasioned by any improper conduct on his part, *Coles v. New York Casualty Co.,* (1903), 87

App. Div. 41, 83 N.Y. Supp. 1063 * * *." 264 Wis at 585.

■■ We hold that in a situation like that here the Disciplinary Committee must consider whether under the circumstances a reasonable alternative to physical force as a defense exists when a person is assaulted. If a person who is assaulted under the circumstances, in the institutional setting with its rules and built-in protections, would still reasonably anticipate serious bodily harm if he were not to forcibly protect himself, and if he has no other reasonable alternative, then a resort to force may·be justified. These matters must be considered in such a setting before sanctions for using force may be imposed. One of the circumstances to consider is the nature and the vigor of the force he used.

Remanded for further consideration, and hearing if necessary.